**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

DD OIL CO
*a West Virginia Corporation,* et al.,

                Plaintiffs,

v.                            CIVIL ACTION NO.   2:24-cv-00101

WEST VIRGINIA DEPARTMENT OF
ENVIRONMENTAL PROTECTION, ET AL.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is defendants West Virginia Department of Environmental Protection, Secretary Harold Ward, Director Katheryn Emery, and four unnamed John Does' ("Defendants") Motion to Dismiss the Amended Complaint.   (ECF No. 29.)   For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.

## I.    BACKGROUND

DD Oil Company and Drilco Oil and Gas Corporation ("Plaintiffs") are two West Virginia based corporations that are affiliated with one another.   (ECF No. 28 at ¶¶ 1–2.)   Both Plaintiffs engage in the "oil and gas" business, (*id.*), though it is unclear from the Amended Complaint what exactly that entails.   Defendants are state agencies and officials who apparently are tasked with enforcing West Virginia's environmental laws.   (*See id.* at ¶¶ 3–5.)

At some point, Plaintiffs drew the attention of Defendants.   Between 2016 and 2022, Defendants performed site visits of Plaintiffs' facilities.   (*See id.* at ¶¶ 14–19.)   Based on those

visits, Defendants allegedly issued documentation of inspection violations ("Notices of Violation") corresponding with those site visits. (*Id.*) Upon Plaintiffs' belief, there was "no factual or legal basis" to issue the Notices of Violation, and the service of those notices were not proper. (*See, e.g.*, *id.* at ¶ 44.) Nevertheless, the Notices of Violation remained unacted upon for years. (*See id.* at ¶ 20.)

In 2022, Plaintiffs filed suit against some of the Defendants in the U.S. District Court for the Northern District of West Virginia alleging "similar claims for violations of its federal constitutional rights" ("Previous Federal Suit"). (*Id.* at ¶ 21.) That suit was settled in August 2023. (*Id.* at ¶ 22.)

In March 2023, Defendants set about to enforce the Notices of Violation through civil action. (*See id.* at ¶¶ 14–19.) Defendants initiated three suits (collectively referred to here as the "Civil Enforcement Suits"). The first was filed in Ritchie County Circuit Court on March 3, 2023, alleging three violations of West Virginia law. (*Id.* at ¶ 14.) The second was filed on March 16, 2023, in Kanawha County Circuit Court, alleging an additional six violations of West Virginia law. (*Id.* at 18.) The third was filed in Roane County Circuit Court on March 30, 2023, alleging five more violations of West Virginia law. (*Id.* at ¶ 16.) Plaintiffs allege that Defendants had "no basis for or intention to assert the claims" in Civil Enforcement Suits until after Plaintiffs filed their Previous Federal Suit. (*Id.* at ¶ 23.)

Plaintiffs filed their Amended Complaint on December 2, 2024. (*Id.*) In the Amended Complaint, Plaintiffs raise six causes of action: (1) retaliation for protected First Amendment activity under 42 U.S.C. § 1983; (2) violations of Plaintiffs' Fourteenth Amendment due process rights under § 1983; (3) violations of Article III, §§ 7, 10, and 17 of the West Virginia Constitution;

(4) abuse of process; (5) civil conspiracy; and (6) general negligence.   (*Id.* at ¶¶ 34–101.)   All of these allegations stem from Defendants' use and alleged abuse of the process for issuing Notices of Violation and for initiating the Civil Enforcement Suits.   (*See generally id.*)   Plaintiffs seek "only injunctive relief, punitive damages, and attorney's fees, costs and expenses" from Defendant WVDEP, and "injunctive relief, punitive damages, attorney's fees, costs and expenses, plus monetary damages for monetary loss and non-monetary loss" from the rest of the Defendants. (*See, e.g.*, *id* at ¶¶ 100–101.)

Defendants timely filed their Motion to Dismiss and accompanying memorandum in support on January 10, 2025.   (ECF Nos. 29, 30.)   Plaintiffs were permitted to file an untimely response brief on July 17, 2025, (ECF No. 33), and Defendants timely filed their reply.   (ECF No. 35.)   The matter is now ripe for adjudication.

## II.    *LEGAL STANDARD*

Federal Rule of Civil Procedure 12(b)(6) allows for a complaint to be dismissed for failing "to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   A motion to dismiss tests the legal sufficiency of a plaintiff's complaint.   *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009).   At the Rule 12(b)(6) stage, a court must "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations."   *E. Shore Markets, Inc. v. J.D. Associates. Ltd. Partnership*, 213 F.3d 175, 180 (4th Cir. 2000).   Yet a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."   *Id.*   To survive a defendant's motion, the complaint must plead sufficient facts to "state a claim to relief that is plausible on its face."   *Iqbal*, 556 U.S. at 679. Thus, the complaint must assert facts to show more than a "sheer possibility that a defendant has

3

acted unlawfully," and must be "facially plausible" such that it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

### III.    ANALYSIS

#### A.    *Count I: First Amendment retaliation claim*

Count I alleges that Plaintiffs have been deprived of their First Amendment rights in retaliation for filing their Previous Federal Suit. (ECF No. 28 at ¶¶ 36–43.) Defendants raise a variety of arguments in favor of dismissing Count I. This Court will first address whether Plaintiffs have sufficiently pled a First Amendment retaliation claim under § 1983. Then, it will address the arguments raised regarding qualified immunity, Eleventh Amendment immunity, and the availability of punitive damages.

##### i.    <u>The merits of Plaintiffs' First Amendment retaliation claim</u>

The First Amendment protects "not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Iannacone v. Ellison*, 776 F. Supp. 3d 388, 398 (S.D. W. Va. 2025) (citing *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000)). "The filing of a lawsuit" is also protected by "the First Amendment right to petition the government for redress of grievances," and thus "carries significant constitutional protections." *ACLU of Md, Inc. v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993).

"To make out a First Amendment retaliation claim, a plaintiff must allege (1) that he engaged in activity protected by the First Amendment, (2) that a defendant took action to adversely affect his First Amendment rights, and (3) that a causal relationship between the protected activity and a defendant's conduct can be established." *Iannacone*, 776 F. Supp 3d. at 798 (citing

*Constantine v. Rectors & Visitors of George Mason University*, 411 F.3d 474, 499 (4th Cir. 2005)).

Defendants offer no argument on the first and second prongs.[1]   Instead, they claim that there is insufficient evidence to support the third prong as no facts support "the causation element." (ECF No. 30 at 3.)

For the third prong of a retaliation claim, Plaintiffs "must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006).   A plaintiff must show that the protected activity was the "but-for cause" of the retaliatory act, "meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* at 399 (citing *Hartman*, 547 U.S. at 260).   For an action to meet the causation requirement, there must be "some degree of temporal proximity to suggest a causal connection." *Constantine*, 411 F.3d at 501.   "A lengthy time lapse between the [public official's] becoming aware of the protected activity and the alleged adverse . . . action . . . negates any inference that a causal connection exists between the two." *Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)).

Defendants claim there is no but-for causation.   The alleged retaliatory action, as Defendants' properly note, was the filing of Defendants' Civil Enforcement Suits.[2]   (ECF No. 30 at 3 ("Plaintiffs' federal First Amendment claim is based on the Defendants having filed civil

---

[1] As such, this Court will simply assume without deciding that Plaintiffs engaged in protected activity and that Defendants' Civil Enforcement Suits were actions taken to adversely affect Plaintiffs' First Amendment rights.

[2] Plaintiffs seem to suggest that the Notices of Violation were somehow also a retaliatory action for filing their Previous Federal Suit.   (*See* ECF No. 33 at 4–5.)   They suggest that the Notices of Violation "were predated to look like they were issued as far back as 2016." (*Id.* at 5.)   That allegation appears nowhere in the Amended Complaint, and there are no facts to suggest such an inference can be made.   Any allegation that the Notices of Violation themselves serve as a retaliatory action is not permitted. *See Barclay White Skanmsa, Inc. v. Battelle Memorial Institute*, 262 F. App'x 556, 563 (4th Cir. 2008) (noting that a plaintiff is not permitted to amend their complaint through responsive briefs).

complaints on March 3, 16, and 30 of 2023.").)  They then note that the alleged violations that form the basis of Defendants' Civil Enforcement Suits all preceded Plaintiffs' Federal Suit.  (*Id.* at 4.)  Defendants argue that Plaintiffs cannot demonstrate but-for causation because "[the] Amended Complaint, on its face, pleads the Defendants in this matter had issued violations to the Plaintiffs that preceded their [Federal Suit] against the WVDEP."  (*Id.*)  As such, Plaintiffs "fail the required causation element for a First Amendment retaliation claim."  (*Id.*)

Defendants miss the point.  The alleged retaliatory action is not Plaintiffs' own apparent misdeeds, nor is it even the Notices of Violation that Defendants issued.  Rather, the alleged retaliatory act is Defendants' choice to proceed with Civil Enforcement Actions.  The Amended Complaint clearly notes that the Defendants' Civil Enforcement Suits were filed in March 2023. (*See* ECF No. 28 at ¶¶ 14–19.)  As can be properly inferred from the Amended Complaint, Plaintiffs' suit in the Northern District of West Virginia was filed in September 2022 and settled in August 2023.  (*See id.* at ¶¶ 21–22); *Cf. Colonial Penn Insurnce Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (citing out of circuit authority for the proposition that "federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").  Not only does Plaintiffs' Previous Federal Suit precede the alleged retaliatory act, there is at least some temporal proximity to suggest, at this stage, that Plaintiffs' Federal Suit was the but-for cause of Defendants' Civil Enforcement Suits.[3]

---

[3] Of course, a retaliatory prosecution claim requires the plaintiff to plead and prove the absence of probable cause. *See Hartman*, 547 U.S. at 265–66.  Defendants failed to raise that argument, so the Court will simply assume Plaintiffs have sufficiently pled the absence of probable cause for the purposes of a motion to dismiss.

Plaintiffs have, therefore, established enough facts to state a claim for First Amendment retaliation.

ii.    <u>Qualified immunity</u>

Defendants assert that they are entitled to qualified immunity.   (*See* ECF No. 30 at 17.) As with their causation claim, Defendants once again claim that Plaintiffs could not have been retaliated against because "the underlying civil actions preceded" Plaintiffs' suit.   (*Id.*) Defendants then claim there is no clearly established right "that prevents a party from prosecuting civil claims against a party simply because that party may later bring a suit of their own."   (*Id.*)

Defendants mischaracterize the right at issue here.   As stated previously, the retaliation does not stem from the violations but the decision to prosecute.   Taking facts and inferences in the light most favorable to Plaintiffs, Defendants chose to proceed with the Civil Enforcement Suits only after Plaintiffs filed their Previous Federal Suit.   Thus, Defendants' attempt to characterize the right as a freedom from prosecution "simply because that party may *later* bring a suit of their own," (*id.* (emphasis added)), is not grounded in the facts.   Rather, the right is better construed as a right to engage in First Amendment protected speech free from a retaliatory prosecution.

Qualified immunity protects public officials "from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"   *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   The immunity serves as "an entitlement not to stand trial or face the other burdens of litigation. The privilege is an immunity from suit rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 200 (2001).   For a constitutional right to be

clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202.   The two step inquiry for qualified immunity requires a court to determine "[f]irst . . . whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right" and "[s]econd . . . whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."   *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Both steps turn in Plaintiffs favor.   First, a plaintiff has the First Amendment right "to appeal to courts and other forums established by the government for resolution of legal disputes." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 386 (2011).   Here, Plaintiffs assert that they did so.   They claim that it was the filing of their Previous Federal Suit that caused Defendants to initiate the Civil Enforcement Actions.   (*See* ECF No. 28 at ¶¶ 14–22.)   Second, the contours of that are also clearly established.   The "law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in First Amendment activity.   *Hartman v. Moore*, 547 U.S. 250, 256 (2006); *see also, e.g.*, *Blankenship v. Manchin*, 471 F.3d 523, 533 (2006) ("In sum, the general proposition that a government official may not retaliate against a citizen for the exercise of a constitutional right is clearly established law. . . ."").   Thus, Defendants should have reasonably known that they could not retaliate against Plaintiffs for their protected conduct.

Accordingly, Defendants are not entitled to qualified immunity at this stage.

iii.    <u>Official capacity claims under § 1983</u>

Defendants also specifically ask for dismissal of the official capacity claims brought under Count I.   (*See* ECF No. 30 at 18–19.)   They argue that, consistent with Supreme Court precedent,

8

"a state is not a person within the meaning of . . . § 1983, and therefore, a state is not subject to liability or damages in a [§] 1983 action.  (*Id.* at 18 (citing generally *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989)).  Since the state has not waived its sovereign immunity, Defendants claim that any claims against the state under § 1983, which include official capacity claims, must be dismissed.  (*See id.* at 19.)

In response, Plaintiffs assert two, rather underdeveloped arguments.  First, Plaintiffs seem to suggest that their suit is, at least in part, a suit for prospective relief.  (*See* ECF No. 33 at 12 ("[Defendants' Eleventh Amendment argument] ignores the fact that they have been sued for non-monetary relief, including injunctive relief and attorney's fees, costs and expenses, in each of Plaintiffs' claims, which [Eleventh] Amendment immunity does not apply to.").)  Second, Plaintiffs argue that any Eleventh Amendment immunity has been waived "to the extent of [Defendants] have procured insurance coverage."  (*Id.*)

The Eleventh Amendment prohibits "[t]he judicial power of the United States" from extending to suits "commenced or prosecuted against one of the United States by Citizens of another State."  U.S. Const. amend XI.  For over a century, the Eleventh Amendment has been interpreted as also barring a "citizen from bringing suit against the citizen's own State in federal court."  *Welch v. Texas Department of Highways and Public Transportation*, 483 U.S. 468, 472 (1987) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 (1890)).

There are three notable exceptions to a state's right to avail itself of sovereign immunity in federal court.  *See Lee-Thomas v. Prince George's County Public Schools*, 666 F.3d 224, 248–49 (2012).  The first arises when Congress affirmatively abrogates the immunity by conveying its unequivocal intention to do so "and acts pursuant to a valid grant of constitutional authority."  *Id.*

at 249 (quoting *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 363 (2001)).    The second exception is the recognized principle that "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law."    *Id.* (quoting *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004)).    The third exception recognizes that a state "remains free to waive its Eleventh Amendment immunity from suit in a federal court."    *Id.* (quoting *Lapides v. Board of Regents of University Systems of Georgia*, 535 U.S. 613, 618 (2002)).    Plaintiffs only raise arguments related to the second and third exceptions.

The second exception to state sovereign immunity, also known as the *Ex Parte Young* exception, is inapplicable here.    To begin, the *Ex Parte Young* exception only applies to state officials, not the state itself or its agencies.    *See Biggs v. North Carolina Department of Public Safety*, 953 F.3d 236, 242 (4th Cir. 2020) ("While under the doctrine set forth in *Ex Parte Young* . . . state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment, the same doctrine does not extend to states or state agencies.") (quoting *Monroe v. Arkansas State University*, 495 F.3d 591, 594 (8th Cir. 2007)).    Since Defendant WVDEP is a state agency, it is entitled to immunity even for prospective relief.

The second exception also does not apply to Plaintiffs' official capacity claims against the individual Defendants.    As part of the *Ex Parte Young* exception, a federal court may "issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law, on the rationale that such a suit is not one against the state for purposes of the Eleventh Amendment."    *Biggs*, 953 F.3d at 242 (quoting *Bland v. Roberts*, 730 F.3d 368, 390 (4th Cir. 2013)).    To meet that exception, however, a court must determine "whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."

10

*Id.* at 242–43 (quoting *Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635, 645 (2002)).

Notably, those allegations are lacking in the Amended Complaint.  With respect to the retaliation claim, Plaintiffs state in a conclusory fashion that Defendants "continu[e] to deprive them of the rights secured" by the First Amendment.   (ECF No. 28 at ¶ 39.)   Yet the actual facts pled do not support that conclusion.   Instead, Plaintiffs claim the retaliation occurred when Defendants "fil[ed]the Circuit Court Claims described herein and throughout in state court against Plaintiffs."   (*Id.* at ¶ 40.)   Although those suits continue, the alleged deprivation is the moment of filing, not prosecution of those suits themselves.[4]  In other words, the retaliatory action was completed once Defendants filed their Civil Enforcement Suits.   Because Plaintiffs' complaint fails to adequately plead an ongoing constitutional violation, the second exception to sovereign immunity does not apply in this case.

Nor does the third exception to sovereign immunity apply here.   It is true that, under West Virginia law, the state waives sovereign immunity to the extent that it procures insurance for a specific claim.   An exception to sovereign immunity under the West Virginia Constitution comes in the form of West Virginia Code Section 29-12-5(a)(4).   That section sets forth a waiver where "(1) a state agency has acquired liability insurance with legislative authorization and (2) the plaintiff suing the agency seeks recovery only 'under and up to the limits' of the available insurance coverage."  *Spurling v. Metropolitan Life Insurance Co.*, 2 025 WL 1840669, at *5 (S.D. W. Va. July 3, 2025) (citing *Pittsburgh Elevator Co. v. W. Va. Bd. of Regents*, 310 S.E.2d

---

[4] If this Court did find that the federal rights deprivation is the prosecution of the Civil Enforcement Suits, then it would likely have to decline jurisdiction of this case under *Younger* abstention.  *See Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 165 (4th Cir. 2008).  If that were the case, then the case would have to be dismissed with prejudice.  *See Nivens v. Gilchrist*, 444 F.3d 237, 247 (4th Cir. 2006).

675, 688 (W. Va. 1983)).

Even though Plaintiffs make a barebones argument regarding Defendants' insurance, it is without merit.   The Supreme Court of Appeals of West Viriginia has stated that "the state insurance policy exception to sovereign immunity, created by West Virginia Code § 29–12–5(a)(4) . . . applies only to immunity under the *West Virginia Constitution*."   *West Virginia Bd. of Educ. v. Marple*, 236 W. Va. 654, 662, 783 S.E.2d 75, 83 (2015) (emphasis original).   Any waiver of sovereign immunity must be by "express language, or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction."   *Westinghouse Elec. Corp. v. West Virginia Department of Highways*, 845 F.2d 468, 470 (4th Cir. 1988).   The insurance statute has not been held as an unequivocal waiver of sovereign immunity for federal constitutional claims.   *See Hood v. West Virgina Department of Health and Human Resources*, 2023 WL 350409, at * 3 (S.D. W. Va. Jan. 20, 2023) (collecting cases).   Thus, even assuming Plaintiffs' unsupported assertion that the Defendants did procure insurance, that would still not result in a waiver of sovereign immunity for the § 1983 claim.

Because no exception applies, Defendants are entitled to Eleventh Amendment immunity for all official capacity claims.

iv.    Punitive damages under § 1983

Defendants next claim that Plaintiffs are not entitled to punitive damages under federal law.   They state that it is "well established that punitive damages are not available against the State in a § 1983 claim."   (ECF No. 30 at 15.)   Plaintiffs respond that "Defendants do not contest that such damages are available for Plaintiffs' § 1983 claims against the individual Defendants in their individual capacities."   (ECF No. 33 at 11.)

Both parties are correct. "Punitive damages are not available in suits under § 1983 against government entities." *Wells v. Board of Trustees of California State University*, 393 F. Supp. 2d 990, 998 (N.D. Cal. 2005) (citing *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 785 (2000)). When a state official is acting in their official capacity, they are also immune from punitive damages. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). Yet punitive damages are available for individual capacity claims against a state official. *Smith v. Wade*, 461 U.S. 30, 35 (1983). Of course, a plaintiff may only collect those punitive damages where a "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Johnson v. City of Fayetteville*, 91 F. Supp. 2d 775, 817 (E.D.N.C. 2015) (citing *Smith v. Wade*, 461 U.S. 30, 56 (1983)). At this point, however, the claim may remain.

Accordingly, Plaintiffs may pursue punitive damages under § 1983 against Defendants for individual capacity claims

### B.    Counts II and IV: Fourteenth Amendment due process claim and abuse of process

Defendants raise a variety of arguments related to Counts II and IV.[5] However, the only one that the Court needs to address, and which justifies dismissal, is the argument that Plaintiffs' claim is not ripe for adjudication.

"Ripeness concerns the appropriate timing of judicial intervention," *Cooksey v. Futrell*, 721 F.3d 226, 240 (4th Cir. 2013), and serves as "a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *National Park Hospitality Association v. Department of Interior*, 538 U.S. 803,

---

[5] Defendants and Plaintiffs address both of these counts together.

13

808 (2003) (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49 (1967)).   Ripeness as

a doctrine draws its origin both from Article III standing and prudential considerations.   *See id.*

When assessing ripeness, a court considers "(1) the fitness of the issues for judicial decision

and (2) the hardship to the parties of withholding court consideration."   *In re Naranjo*, 768 F.3d

332, 347 (4th Cir. 2014) (quoting *Cooksey*, 721 F.3d at 240).   As for the first prong, "[a] case is

fit for adjudication when the action in controversy is final and not dependent on future

uncertainties."   *Scroggins v. Lee's Crossing Homeowners Association*, 718 F.3d 262, 270 (4th

Cir. 2013).   By contrast, fitness is absent and the "claim is not ripe when 'it rests upon contingent

future events that may not occur as anticipated.'"   *In re Naranjo*, 768 F.3d at 347 (quoting

*Scroggins*, 718 F.3d at 270).   Ideally, a fit case simply presents legal issues for a court to consider.

*Id.*   The second prong regarding hardship assesses "the immediacy of the threat and the burden

imposed on the [parties]."   *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006).

In response to Defendants' assertion, Plaintiffs state that their due process claim is founded

on the following facts: (1) that Defendants failed to "serve upon Plaintiffs the Notices of Violation"

which form the basis of Defendants' Civil Enforcement Suits; (2) that Defendants failed to

"effectuate proper service" of Defendants' Civil Enforcements Suits; and (3) "Defendants'

decision to file the [Civil Enforcement Suits] against Plaintiffs seeking to recover millions of

dollars in monetary penalties while foregoing any of the required administrative procedures . . . as

prescribed by state statute . . . ."   (ECF No. 33 at 5–6.)   As such, Plaintiffs aver that they were

"deprived . . . of the opportunity to engage in the administrative process for resolving [the Notices

of Violation] and" that Defendants' choice to file the suit "compromised [their] ability to preserve

relevant evidence and mount a defense to [the Civil Enforcement Suits]."   (*Id.* at 5.)

14

Yet, as Defendants note, these deprivations are all "contingent upon the State Court's ruling." (ECF No. 30 at 6.) An examination of the procedural due process, substantive due process, and abuse of process claims highlights why that is.

i.    Procedural due process

To plead a procedural due process claim, Plaintiffs must show three elements. First, they must show that they possessed "a constitutionally cognizable life, liberty, or property interest." *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013). Second, they "must show that the deprivation of that interest was caused by some form of state action." *Id.* Third, Plaintiffs are required to show "that the procedures employed were constitutionally inadequate." *Id.* (quoting *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 145 (4th Cir. 2009)).

Plaintiffs' Amended Complaint does not directly state what interest is deprived under procedural due process. From the Amended Complaint, it seems the interest asserted is the property interest in the "exorbitant monetary penalties" that the Defendants "now seek . . . in connection with the Notices of Violation[s]." (ECF No. 28 at ¶ 55.) As Plaintiffs rightly state, the Defendants *now seek*. Yet, it is unclear if they will be successful in that endeavor. In other words, whether or not Plaintiffs will be deprived of their protected interest is contingent upon the state court's ruling. Thus, Plaintiffs procedural due process claim is not ripe.

ii.    Substantive due process

Similarly, Plaintiffs do not have a ripe substantive due process claim. "[A] plaintiff asserting a § 1983 substantive due process claim must allege both the deprivation of his life, liberty or property interest by a state actor, and that the deprivation of this interest was 'arbitrary in the constitutional sense.'" *Callahan v. North Carolina Department of Public Safety*, 18 F.4th 142,

15

145 (4th Cir. 2021) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). To be arbitrary in the constitutional sense, the deprivation involved must "shock[] the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

Here, Plaintiffs assert that the liberty interest at issue is "the fundamental right to challenge government actions by Defendants and to hold the Defendants, as government actors, accountable for violations of Plaintiffs' constitutional rights." (ECF No. 28 at ¶ 56.) Even assuming that Plaintiffs' asserted right is a constitutionally cognizable liberty interest under the Fourteenth Amendment,[6] it is unclear if Plaintiffs have been deprived of such an opportunity. Since Plaintiffs are currently contesting Defendants' Civil Enforcement Suits through the process prescribed by state law, it is unclear if they have been deprived of their asserted right to challenge.

For purposes of a ripe due process claim, it does not matter what Defendants' motivations were. (*See* ECF No. 33 at 6 (suggesting that the choice to proceed with the Civil Enforcement Suits in lieu of alternative actions "prove[s] both a violation of Plaintiffs' due process rights and a retaliatory animus").) Rather, it matters if the procedures employed were constitutionally adequate. Since the state proceedings continue to play out, the Court has no ability to assess the adequacy of the process involved at this time.

### iii. Abuse of process

Similarly, Defendants argue that Plaintiffs' claim for abuse of process under state law is not ripe.

Under West Virginia law, "abuse of process consists of the willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted

---

[6] A "right to challenge" would seem to draw its essence from the text of the First Amendment right to petition.

by that process." *Williamson v. Harden*, 214 W. Va. 77, 80, 585 S.E.2d 369, 372 (2003) (quoting *Preiser v. MacQueen,* 177 W. Va. 273, 279, 352 S.E.2d 22, 28 (1985)). "The elements of an abuse of process claim include 'first, an ulterior purpose, and second, a willful act in the use of the process not proper in the regular conduct of the proceeding.'" *Ballock v. Costlow*, 430 F. Supp. 3d 146, 158 (N.D. W. Va. 2019) (quoting *Preiser*, 352 S.E.2d at 28 n.8) (emphasis removed). Unlike a malicious prosecution claim, an abuse of process claim stems from "the improper use of a regular issued process, not for maliciously causing process to issue." *Southern States Cooperative, Inc. v. I.S.P. Co.*, 198 F. Supp. 2d 807, 816 (N.D. W. Va. 2002) (quoting *Preiser*, 352 S.E.2d at 28–29)

Plaintiffs' claim is, at best, not ripe. To begin, the only viable basis of an abuse of process claim would be Defendants' conduct during the Civil Enforcement Suits.[7] Simply initiating a suit, even with ill intent, is insufficient to form the basis of an abuse of process claim. *Hoback v. Cox*, 2021 WL 3669324, at *6 (S.D. W. Va. Aug. 18, 2021) ("Because the distinctive nature of an action for abuse of process . . . is that it lies for the improper use of a regularly issued process, not for maliciously causing process to issue, . . . the mere filing of a complaint does not give rise to a claim for abuse of process." (citations omitted)). This means the only way a viable claim can arise is if Defendants do something during the pendency of the Civil Enforcement Suits that would be considered abuse of process. However, "there is no liability" for a claim of abuse of process

---

[7] Plaintiffs' Amended Complaint suggests that the basis of their abuse of process claim is either Defendants' choice to sue Plaintiffs, or that Defendants failed to adhere to unspecified administrative procedures. (*See* ECF No. 28 at ¶ 79 ("Upon information and belief, the Defendants intentionally subverted the proceedings prescribed by administrative and statutory law in an attempt to accomplish their animus plan. . . .").) Plaintiffs have never explained what these procedures were. However, Defendants cite to West Virginia law which says the Secretary "may issue an order stating with reasonable specificity the nature of the violation and requiring compliance within a reasonable specified time period, *or* the secretary may commence a civil action in [a] circuit court . . . for appropriate relief, including a temporary or permanent injunction." (ECF No. 30 at 7 n.3 (emphasis added).)

"where the defendant has done nothing more than carry out [a lawful] process to its authorized conclusion." *Launi v. Hampshire County Prosecuting Attorney's Office*, 249 W. Va. 262, 273, 895 S.E.2d 117, 128 (2023) (quoting *Preiser*, 352 S.E.2d at 28 n.8).   Given that the process continues to play out, and that Plaintiffs have not shown anything within that process that was abusive, it is unclear how Defendants have abused the process of the Civil Enforcement Suits. Perhaps Defendants will do something in the future to abuse the state process.   Given that the Court can only speculate as to what that abuse would be, Plaintiffs' claim for abuse of process is not ripe.

For those reasons, Counts II and IV of the Amended Complaint must be **DISMISSED WITHOUT PREJUDICE**.

### C.      *Count III: West Virginia constitutional claims*

For Count III, Plaintiffs allege multiple violations of their rights protected by the West Virginia Constitution.   These include Article III, §§ 7, 10, and 17, which are, respectively, freedom of speech, due process rights, and the right to petition.   (ECF No. 28 at ¶ 65.)   This Court will first address § 10 before addressing §§ 7 and 17 together.

### i.      State due process rights (Article III, § 10)

Plaintiffs' Amended Complaint alleges that, for similar reasons as stated in Count II, Defendants deprived them of their due process rights under Article III, § 10 of the West Vrignia Constitution.   (*See* ECF No. 28 at ¶¶ 64–70.)

Defendants contend that Plaintiffs "have not alleged sufficient facts to state a claim" under § 10.   They note that the Supreme Court of Appeals of West Virginia has indicated that it "relie[s] upon federal interpretation of the due process clause of the United States Constitution to determine

the nature and scope of Article III § 10 of the West Virginia Constitution." (ECF No. 30 at 11 (citing *North v. West Virginia Board of Regents*, 160 W. Va. 248, 253–54, 233 S.E.2d 411, 415–16 (1977)).) As such, Defendants argue that the Court should analyze the § 10 claim in a similar manner as the federal due process claim. Specifically, Defendants point to *Parratt v. Taylor* for the proposition that "[t]he fundamental requirement of due process is the opportunity to be heard, and it is an opportunity which must be granted at a meaningful time and in a meaningful manner." (*Id.* (citing *Parratt v. Taylor*, 451 U.S. 527, 540 (1980)).)

Plaintiffs for their part largely repeat their same arguments made in Count II. They claim to "have alleged that they were not served with/put on notice of the Notices of Violation prior to the filing of the three Circuit Court actions to enforce them," and that "Defendants did not decide to pursue those Notices until" the filing of the Civil Enforcement Suits. (ECF No. 33 at 8.) Similar to Count II, Plaintiffs also claim Defendants did not engage in an unspecified "administrative process" and "unquestionably compromised Plaintiffs' ability to gather evidence" by "waiting in some cases six and seven years to put Plaintiff[s] on notice of or seek to enforce these Notices of Violation."

Defendants' belief that Count II and the § 10 claim should be analyzed under a similar framework has support. *See Brown v. Mason County Commission*, 2019 WL 6654124, at *4 (S.D. W. Va. Dec. 5, 2019) ("In deciding whether a party deprived someone of their property or liberty interest without due process of law under the West Virginia Constitution, the West Virginia Supreme Court looks to, and follows federal case law and precedent."). As such, the claim should be dismissed as not ripe. Although the ripeness argument was not specifically raised as to Count III, a district court is empowered to consider the issue of ripeness on its own. *See National Park*

*Hospitality Association*, 538 U.S. at 808 ("The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction, . . . [B]ut, even in a case raising only prudential concerns, the question of ripeness may be considered on a court's own motion." (quotations omitted)).

Like Count II, it is unclear if Plaintiffs were given the opportunity to be heard or if their ability to "gather evidence" truly deprived them of that meaningful opportunity.   Regardless, it is clear that these are not the sort of purely legal issues that make a case fit for adjudication.   *See In re Naranjo*, 768 F.3d at 347 ("A case is fit for adjudication when the action in controversy is final and not dependent on future uncertainties; conversely, a claim is not ripe when it rests upon contingent future events that may not occur as anticipated. . . . In addition, a fit case would ideally present 'purely legal' issues." (quotations omitted)).

As noted earlier in this opinion, the question of any deprivation in violation of the due process clause remains unanswered.   As such, it would be improper for the Court to adjudicate a right that may or may not be violated in the end.   Count III, with respect to the § 10 due process claim, must be **DISMISSED WITHOUT PREJUDICE**.

    ii.    <u>State rights to freedom of speech and to petition (Article III, §§ 7 and 17)</u>

Similar to Count I, Defendants raise a variety of arguments as to why Count III should be dismissed.   As such, the Court will first address the merits of Plaintiffs' §§ 7 and 17 claim, followed by an analysis of qualified immunity, the availability of monetary damages, the availability of punitive damages, and finally the official capacity claims.

### a. The merits of the §§ 7 and 17 claims

Regarding the merits of Plaintiffs' §§ 7 and 17 claims, Defendants state that these claims "can be analyzed under the same framework [as Count I] has been analyzed."   (ECF No. 30 at 9.) Defendants then argue "[i]n the same vein as [Count I] . . . Plaintiffs['] claims fail due to the lack of meeting the causation element as illustrated above."   (*Id.*)   As such, the only argument Defendants raise concerns causation and the allegation that "Defendants in this matter had issued [the Notices of Violation] to the Plaintiffs" before they initiated the Civil Enforcement Suits.   (*Id.* at 9–10.)

Defendants' proposition that §§ 7 and 17 can be analyzed in the same manner as a § 1983 retaliation claim has support.   *See McGraw v. Imperial Marketing*, 196 W. Va. 346, 359 n.43, 472 S.E.2d 792, 805 n.39 (1996) ("The First Amendment to the United States Constitution and Article III, Section 7 of the West Virginia Constitution are virtually identical in pertinent parts. . . . [W]e use the First Amendment to the United States Constitution and Article III, Section 7 of the West Virginia Constitution interchangeably."); *see also State v. Berrill*, 196 W. Va. 578, 581–86, 474 S.E.2d 508, 512–16 (1996) (analyzing a First Amendment claim and a claim under the West Virginia Constitution together).   Therefore, the Court will simply adopt the same reasoning applied to Count I.   Accordingly, Plaintiffs have sufficiently pled a cause of action for Count III with respect to the §§ 7 and 17 claims.

### b. Qualified immunity

Similar to their discussion of the merits of a §§ 7 and 17 claim, Defendants also state that the qualified immunity analysis should follow that of Count I.   (*See* ECF No. 30 at 16–17 ("West Virginia follows a similar framework as the Supreme Court outlined in *West Virginia Regional*

*Jail and Correctional Facility Authority v. A.B.*, 234 W. Va. 492, 503, 766 S.E.2d 751, 762 (2014).").)

As before, the Court will simply adopt the reasoning applied to Count I to qualified immunity for §§ 7 and 17. Accordingly, Defendants are not entitled to qualified immunity on the state law constitutional claims.

### c.    Monetary damages

Defendants argue that, even if Plaintiffs have alleged a cause of action under §§ 7 and 17, they do not "provide a cause of action for money damages." (ECF No. 30 at 12.) For support, Defendants note that in *Fields v. Mellinger*, the Supreme Court of Appeals of West Virginia held that "there was no right of action for money damages under Article III, § 6" of the West Virginia Constitution. (*Id.* at 13.) The holding was based on a "lack of an authorizing statutory scheme [under West Virginia law] akin to § 1983 and the fact that there were alternative remedies available." (*Id.* (citing *Fields v. Mellinger*, 851 S.E.2d 789, 792–99 (W. Va. 2020)).) Plaintiffs claim the same analysis should be applied to §§ 7 and 17. Since Plaintiffs have "multiple alternative remedies" through § 1983, and because there is no "authorizing statute" akin to § 1983 claims, Defendants believe the Court should dismiss Count III "to the extent Plaintiff[s] [are] asking for money damages." (*Id.*)

For their part, Plaintiffs do not dispute much of Defendants' argument. They first claim they were not seeking monetary penalties against Defendant WVDEP. (ECF No. 33 at 9.) Plaintiffs then state that if "the Court believes monetary damages to be unavailable to for claimed violations of Article III, Sections 7 and 17 . . . the claim for all damages other than monetary damages for violations of Article III, Sections 7 and 17 must stand and survive Defendants' Motion

to Dismiss."   (*Id.*)

Defendants' uncontested argument has merit.   In *Fields*, the Supreme Court of Appeals of West Virginia ruled that there was no claim for monetary damages under § 6 because "alternative remedies" existed in the absence of a state authorizing scheme.   *Fields*, 244 W. Va. at 136, 851 S.E.2d at 799.   Among those remedies included the ability to bring suit under 42 U.S.C. § 1983. *See id.*   As should be clear from the preceding sections of this opinion, Plaintiffs have the ability to recover monetary damages under § 1983 for violations of their First Amendment rights.   That includes the right to speech and the right to petition.   Accordingly, § 1983 serves as an alternative remedy and no monetary damages appear to be recoverable for the corresponding state claims.

This conclusion is supported by caselaw within this district.   Since West Virginia "lacks a state analogue to § 1983," courts within the district "have generally held money damages are not available for violations of [A]rticle III rights."   *Billiter v. Jones*, 2020 WL 118595, at *5 (S.D. W. Va. Jan. 9, 2020) (concluding no monetary damages are recoverable under § 7 claims) (collecting cases).   True, a suit seeking non-monetary damages may be permissible.   *See id.* ("The Supreme Court of Appeals did, however, authorize injunctive relief in *Harrah v. Leverette* for an article III, section 5 claim.").   Yet given the application of *Fields*, this Court will not depart from its colleagues within the district with respect to the availability of monetary damages.

Accordingly, Plaintiffs may not recover monetary damages under Count III.

### d.  *Punitive damages*

Under Count III, Plaintiffs claim they are entitled to punitive damages against both WVDEP and the individual defendants.   (*See* ECF No. 28 at ¶ 72.)   Defendants assert that Plaintiffs are not entitled to such damages since West Virginia Code § 55-17-4(3) precludes

collecting punitive damages from a government agency.   (ECF No. 30 at 15.)   Defendants also claim that "Plaintiffs cannot receive punitive damages as they are not seeking money damages," since "the general rule in West Virginia [is] that one cannot recover punitive damages when compensatory damages have not been awarded."   (ECF No. 35 at 11 (citing *Lunsford v. Shy*, 243 W. Va. 175, 182, 842 S.E.2d 728, 735 (2020).)   Plaintiffs claim that other courts within the district have found that the waiver of punitive damages is not applicable in federal courts.   (ECF No. 33 at 11 (citing *Smith v. Allred*, 2016 WL 3094008, at *15–16 (S.D. W. Va. June 1, 2016).)

Defendants' contention that Plaintiffs are not seeking monetary damages is factually incorrect.   (*See* ECF No. 28 at ¶ 74 "Plaintiffs hereby demand from the Defendants other than WVDEP injunctive relief, punitive damages, attorney's fees, costs and expenses, plus monetary damages for monetary loss and non-monetary loss. . . .").)   Despite that shortcoming, the general argument that punitive damages are not recoverable for the §§ 7 and 17 claims is well taken.   As the Supreme Court of Appeals of West Virginia has stated, "punitive damages [generally] must bear a reasonable relationship to actual damages because compensatory damages provide a reasonable measure of likely harm."   *Garnes v. Fleming Landfill, Inc.*, 186 W. Va. 656, 667, 413 S.E.2d 897, 908 (1991).   A court may not award punitive damages for a West Virginia state law claim without an award of compensatory damages.   *Cf id.* ("Therefore, we overrule Syllabus Point 3 of *Wells* to the extent that it stands for the proposition that a jury may return an award for punitive damages without finding *any* compensatory damages." (emphasis original)).   Since Plaintiffs are not able to recover monetary damages for their §§ 7 or 17 claims, it logically follows that they cannot recover punitive damages.

24

While Plaintiffs may be correct that they can theoretically recover punitive damages against these Defendants, there is no such recovery for the state claims they have asserted. Because there is no right to compensatory damages for these claims under West Virginia law, there is no ability to recover punitive damages under Count III.

e. *Official capacity claims under §§ 7 and 17*

Defendants raise for the first time in their reply brief that there is sovereign immunity related to the official capacity claims on the state law claims.[8]   In fact, Defendants' only argument regarding Plaintiffs' official capacity claims for Count III regards diversity and, by implication, supplemental jurisdiction.[9]

Defendants' failure to raise the issue means it is, at least for this order, waived.   A party must raise their arguments in the opening brief of their motions.   "Generally, new arguments cannot be raised in a reply brief before the district court."   *De Simone v. VSL Pharmaceuticals, Inc.*, 36 F.4th 518, 531 (4th Cir. 2022).   "A party waives an argument by failing to present it in its opening brief or by failing to develop its argument–even if its brief takes a passing shot at the issues." *Grayson O Co. v. Agadir International LLC*, 856 F.3d 307, 316 (4th Cir. 2015).

Here, Plaintiffs only took a passing shot at claiming sovereign immunity for official capacity claims in their reply brief.   The opening brief clearly frames the issue of Eleventh

---

[8] (*Compare* ECF No. 30 at 18 ("Based on Plaintiffs' Complaint, Plaintiffs' claims against the WVDEP, Defendant Ward, and Defendant Emery in their official capacities, are claims under 42 USC §1983 against the State of West Virginia.   As the State has not waived its right to the protections of the 11th Amendment, Plaintiffs' claims against the State must be dismissed before this Court."), *with* ECF No. 35 at 10 ("Accordingly, the State Defendants are entitled to Eleventh Amendment Immunity on both federal and state law claims.").)

[9] (*See* ECF No. 30 at 19–20 ("As described above, the WVDEP, Defendant Ward, and Defendant Emery in their official capacities have not waived their right to the protections of the 11th Amendment, thus the Federal Law claims against the state must be dismissed. . . . The second provision of subject matter jurisdiction, diversity of citizenship, has not been met as Plaintiffs are corporations lawfully organized in the State of West Virginia with a principal place of business in the State. . . . Given this, the Court lacks subject matter jurisdiction over the state law claims contained in counts 3, 4, 5, and 6 against the WVDEP, Defendant Wade, and Defendant Emery, in their official capacities.").)

25

Amendment immunity with respect to § 1983 claims. However, even the reply brief fails to explain how that analysis interacts with the state law claims. Having raised sovereign immunity, it was Defendants' burden to prove they were entitled to it. *See Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 176 (4th Cir. 2019) ("Given the unique attributes of sovereign immunity, we have held that the burden of proof falls to an entity seeking immunity as an arm of the state, even though a plaintiff generally bears the burden to prove subject matter jurisdiction."). Defendants have failed to meet the burden based on their briefing.

In any event, it is not immediately clear that Defendants are entitled to immunity. As previously stated, Plaintiffs lack the ability to recover monetary damages generally for their state constitutional claims. It is not clear, however, that a plaintiff cannot seek prospective relief for a claim under Article III, §§ 7 or 17. While it was clear Plaintiffs could not meet the standard for prospective relief under federal law, Defendants failed to make it apparent to the Court that Plaintiffs cannot receive prospective relief under state law. In fact, the Court has found instances where a right to prospective relief for violations of the West Virginia Constitution have been authorized. *See Billiter v. Jones*, 2020 WL 118595, at *5 (S.D. W. Va. Jan. 9, 2020) (allowing a claim for injunctive relief under Article III, §§ 7 and 16 to proceed). Whether Plaintiffs may seek that relief against individuals in their official or individual capacity is not clear, but the Court will not develop that argument for Defendants.

Since Defendants have failed to develop that argument in their opening brief, the issue is waived for the purposes of this opinion only.[10]

---

[10] However, "subject-matter jurisdiction can never be waived." *United States v. Moran*, 70 F.4th 797, 802 (4th Cir. 2023) (citing *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012)). If it is later determined that the Court lacks subject-matter jurisdiction over this specific claim, then the Court will proceed accordingly. *See* Fed. R. Civ. P. 12(h)(3).

### D.    Count V: civil conspiracy

Count V of Plaintiffs' Complaint asserts civil conspiracy among the Defendants.   Under West Virginia law, civil conspiracy is "not a standalone cause of action."   *Green v. Putnam County Commission*, 2022 WL 16859755, at *6 (S.D. W. Va. Nov. 10, 2022).   Instead, it is a "legal doctrine under which liability for a tort may be imposed on people who did not actually commit the tort themselves but who shared a common plan" with the tortfeasors themselves.   *Id.* (quotation omitted).   Under § 1983, however, civil conspiracy is a standalone claim.   It requires the plaintiff to prove "1) the defendants acted jointly in concert, 2) an overt act was done in furtherance of the conspiracy, and 3) the overt act resulted in deprivation of plaintiff's constitutional right."   *Id.* (citing *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)).

Here, Defendants only argue that, because "the proceeding Counts [I–V of Plaintiffs' Amended Complaint] fail, then [so] too must" the civil conspiracy claim.   (ECF No. 30 at 13.)

Because Counts I and III remain, Defendants' sole argument is moot.   Thus, Defendants' Motion as to Count V is **DENIED**.

### E.    Count VI: Negligence

Plaintiffs plead Count VI as an "[i]n the alternative" allegation of general negligence. (ECF No. 28 at ¶ 95.)   They claim that Defendants owed them "a duty of reasonable care to follow the law as to the procedures required to enforce Notices of Violation."   (*Id.*)

Defendants claim that Count VI fails to plausibly state a claim for negligence.   Notably, Defendants observe that Plaintiffs' Amended Complaint generally alleges "intentional torts." (ECF No. 30 at 14.)   Yet the mere "allegation that the Defendants were also negligent at the same time does not transform the claims based on intentional acts into a negligence claim."   (*Id.*)

27

Plaintiffs dispute the characterization.  They claim that, despite their previous assertions of intentional or malicious acts, Defendants may have actually initiated the Civil Enforcement Suits "without conducting due diligence to know that there was no factual or legal basis for those claims."  (ECF No. 33 at 10.)  This "due diligence failure" apparently took the form of "failing to effectuate service of process upon Plaintiffs[,] . . . failing to follow the law in pursuing enforcement of" the Notices of Violation, or "foregoing any of the required administrative procedures or seeking injunctive relief as prescribed by the state statute."  (*Id.*)  Plaintiffs then claim that if they "prove Defendants failed to serve Notices of Violation upon [them] . . . but fail to prove that Defendants did so intentionally and the jury concludes it was simply oversight," then they can make out a negligence claim.  (*Id.*)  Alternatively, Plaintiffs aver that Defendants "failed . . . to conduct due diligence to ensure that there was any factual or legal basis for the issuance of the Notices of Violation and that there is no factual or legal basis for their issuance, but fail to prove that Defendants did so intentionally to retaliate against Plaintiffs," then Defendants would similarly be liable for negligence.  (*Id.*)  Of note, neither of these allegations appear in Plaintiffs' Amended Complaint.

A claim for negligence under West Virginia law requires the plaintiff to "show four basic elements: duty, breach, causation, and damages."  *Hersh v. E–T Enterprises, Ltd.*, 232 W.Va. 305, 310, 752 S.E.2d 336, 341 (2013).  As a rule, a plaintiff cannot "prevail on a claim of simple negligence based on [a defendant's] intentional act."  *Smith v. Lusk*, 533 F. App'x 280, 284 (4th Cir. 2013) (citing *Stone v. Rudolph*, 32 S.E.2d 742, 748 (W. Va. 1944)).  "Conduct that supports a negligence claim can be distinguished from conduct that supports an intentional tort claim by examining the subjective intent of the alleged tortfeasor."  *Weigle v. Pifer*, 139 F. Supp. 3d 760,

780 (S.D. W. Va. 2015) (Copenhaver, J.).    Rather, conduct that forms the basis of an intentional tort "generally require[s] that the actor intend the consequences of an act, not simply the act itself." *Id.* (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998)).    Merely alleging negligence does not "turn an intentional tort into negligent conduct."    *Id.* (quoting *Benavidez v. United States*, 177 F.3d 927, 931 (10th Cir.1999)).

Here, Plaintiffs simply regurgitate the same factual allegations, yet claim that the actions could be seen as negligent.    The entirety of Plaintiffs' Amended Complaint repeatedly states some variation of the allegation that Plaintiffs' actions were intentional or malicious in some way.    (*See* ECF No. 33 at ¶¶ 29–31, 44–45, 53–54, 60–61, 71–72, 79, 82–83, 90–91.)    It is only in paragraph 96 where Plaintiffs state that all of the allegations "as described herein and throughout" are also a "breach[] [of] the duty of reasonable care" owed to them.    (ECF No. 28 at ¶ 96.)    As described throughout, Plaintiffs allege "Defendants intentionally bypassed the required administrative procedures and statutory requirements."    (*See, e.g.*, *id.* at ¶ 29.)    Further, they assert that Defendants exhibited a "knowingly, intentionally, and with a callous disregard" for Plaintiffs' rights "by filing the Circuit Court Claims with no factual or legal basis."    (*See, e.g.*, *id.* at ¶ 53.) Plaintiffs' allegation in their response brief that Defendants alternatively engaged in "simple oversight" in failing to serve the Notices of Violations or failed to "conduct due diligence to ensure that there was any factual or legal basis," (ECF No. 33 at 10), lacks any support within the Amended Complaint.

Because Plaintiffs are merely relying on intentional acts to form the basis of their negligence claim, it cannot overcome a motion to dismiss.    Therefore, Count VI of the Amended Complaint is **DISMISSED**.

29

### IV.    CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss.   (ECF No. 29.)   The Motion is **DENIED** as to Count I, for all individual capacity claims against Defendants.   It is also **DENIED** as to Count III's prayer for non-monetary relief brought under Article III, §§ 7 and 17 of the West Virginia Constitution. Finally, it is **DENIED** as to Count V.

Except as stated above, Defendants' Motion is otherwise **GRANTED**.   Counts II, III (as it relates to Article III, § 10 of the West Virginia Constitution), and IV are **DISMISSED WITHOUT PREJUDICE**.   Count VI is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        September 19, 2025

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE